UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MICHAEL J. BARIL, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION No. 12-cv-40142-TSH |
| TOWN OF UXBRIDGE, and SCOTT J. FREITAS, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER REMANDING CASE TO SUPERIOR COURT
February 19, 2013

**HILLMAN, J.**

*STATEMENT OF THE CASE*

This action arises out of allegations that a local law enforcement officer harassed a citizen over a prolonged period of time. On August 29, 2012, Michael J. Baril ("Plaintiff") filed a Complaint in Worcester Superior Court against the Town of Uxbridge ("Uxbridge") and Police Chief Scott J. Freitas ("Chief Freitas") (collectively "Defendants") asserting twelve counts under state and federal law (Docket No. 9).[1] Defendants removed this case to district court on October 12, 2012 (Docket No. 8). On October 15, 2012, Defendants moved to dismiss eleven counts under Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted (Docket No. 6). On December 10, 2012, Plaintiff filed an Opposition that voluntarily dismissed

---

[1] The Complaint mislabels Count IV as "Count VI" and misidentifies Chief Freitas rather than Uxbridge as the subject of liability under Count XII. On August 25, 2011, Plaintiff complied with statutory requirements by delivering to Defendants a "Statutory Letter of Presentment" pursuant to Mass. Gen. Laws ch. 258, § 4.

the remaining claims against Uxbridge (Docket No. 17).[2] The only cause of action upon which this Court can maintain jurisdiction is Count XI for civil rights violations under 42 U.S.C. § 1983 against Chief Freitas.

## BACKGROUND

Although the allegations giving rise to this suit display a pattern of harassment beginning in 2005,[3] the relevant period for the disposition of this motion starts in 2009. Compl. Ex. A; Mass. Gen. Laws ch. 260, § 2A (noting three-year statute of limitations for tort and contract actions). On or about November 15, 2009, Plaintiff was performing two-way radio maintenance work for the Town of Kingston ("Kingston") Fire Department. Compl. Ex. A. At that time, Kingston Police informed Plaintiff that there was a warrant issued for his arrest in his hometown of Uxbridge. *Id.* After inquiring with Kingston authorities, Plaintiff was told that Chief Freitas met with Kingston's Police Chief, Joseph J. Rebello, and informed him that Plaintiff had an arrest warrant for "stalking" a former Uxbridge–and current Kingston–public employee. *Id.* Concerned about the allegations, Plaintiff contacted Uxbridge Police and discovered that no such

---

[2] On October 22, 2012, Uxbridge filed an Answer only as to Count VIII for Negligent Infliction of Emotional Distress (Docket No. 8). This is the only surviving claim against Uxbridge.

[3] The pattern of harassment began with a traffic stop on or about December 22, 2005. Compl. Ex. A. During the stop, George Reno ("Reno"), an Uxbridge resident, was pulled over by Massachusetts State Trooper Christopher N. Sanchez ("Trooper Sanchez"). *Id.* The purpose of the stop was to question Reno about the emergency lights–customarily reserved for police and emergency responders–that were affixed to his vehicle. *Id.* Reno informed Trooper Sanchez that he was a member of the Central Massachusetts Public Safety Association Incorporated ("CMPSA"), a volunteer organization founded by Plaintiff that provides disaster relief and assistance at public events such as fairs, parades, and races. *Id.* The CMPSA is not affiliated with any state or local agency. *Id.* During the stop, Trooper Sanchez called Chief Freitas to inquire about the CMPSA. *Id.* At that time, Chief Freitas allegedly informed Trooper Sanchez of his disdain not only for the CMPSA and Plaintiff, but also the "emergency disaster" license plates that adorned members' vehicles. *Id.*

Although Reno was released without further incident, Trooper Sanchez and Chief Freitas later met to discuss the legality of the CMPSA. *Id.* During this meeting, Trooper Sanchez requested a letter from Chief Freitas recommending that the CMPSA's license be revoked by the Massachusetts Registry of Motor Vehicles ("RMV"). *Id.* On December 28, 2005, Chief Freitas crafted such a letter on Uxbridge letterhead, explicitly stating that the police "had issues in the past with Association members relative to misuse of emergency red lights" despite the fact that no record of such violations exists in public record. *Id.* In furtherance of his letter, Chief Freitas also appeared at an RMV hearing in August 2006. *Id.*

warrant existed.[4] *Id.* The following day, Plaintiff informed his employer, CFM Communications, about the confusion involving the warrant. *Id.* Nevertheless, Plaintiff was summarily terminated from his employment. *Id.*

### *THE 12(B)(6) STANDARD*

Plaintiffs must plead "a short and plain statement of the claim" demonstrating that the court has jurisdiction over their matter and that they are entitled to the relief they seek. Fed. R. Civ. P. 8(a)(1)-(3). This standard does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (internal citations omitted). Defendants may move to dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must evince the requisite factual detail to establish a plausible claim by "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). When deciding a motion to dismiss, the court is obligated to accept all factual accounts contained within the complaint as true and draw all reasonable inferences in a plaintiff's favor. *See Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).

### *QUALIFIED IMMUNITY UNDER MASSACHUSETTS LAW*

Defendants allege the affirmative defense of qualified immunity as to Chief Freitas (Docket No. 7). Although inartfully crafted in the Complaint, Plaintiff correctly notes that during all relevant times Chief Freitas was Uxbridge's Chief of Police. The issue, nevertheless, is

---

[4] There is a discrepancy in the dates of the alleged events. A November 30, 2009 letter from Uxbridge Police Officer, Lt. Peter B. Emerick, states that Plaintiff inquired about the false warrant on November 12, 2009, three days prior to when Plaintiff alleges he discovered the issue on November 15, 2009. *Id.*

whether or not qualified immunity under Massachusetts law insulates Chief Freitas from suit when he is being sued in his individual capacity.

Defendants first argue that public employers can only be held liable for the *negligent* or wrongful acts or omissions of their employees. *See Farrah v. Gondella*, 725 F. Supp. 2d 238, 248 n.9 (D. Mass. 2010); Mass Gen. Laws ch. 258, § 2. Defendants further contend that municipalities, like Uxbridge, cannot be held liable for *intentional* torts committed by their employees. Mass. Gen. Laws ch. 258, § 10(c); *Spring v. Geriatric Auth. Of Holyoke*, 394 Mass. 274, 284-86 (1985). While the legal standards that Defendants assert are substantively correct, they grossly mischaracterize the causes of action proffered in this Complaint. Essentially, Defendants would like the Court to accept its flawed syllogism to avoid liability by glossing over the fact that public employees can always be held liable for their *intentional* torts, even if they are committed during the scope of their employment. Mass. Gen. Laws ch. 258, §§ 9, 10(c). Accordingly, where, as here, a public employee is sued for intentional conduct undertaken during the official scope of their employment, qualified immunity protections are inapplicable to any claims in suit. Mass. Gen. Laws ch. 258, §§ 9, 10(c); *O'Malley v. Sheriff of Worcester Cnty.*, 415 Mass. 132, 142 (1993).

### *DISCUSSION*

### Civil Rights Violations Against Chief Freitas Under 42 U.S.C. § 1983

Count XI alleges that Chief Freitas "engaged in a course of conduct, including, but not limited to those actions set forth in Counts I through V, under color of law, and which deprived the Plaintiff of rights, privileges, and/or immunities secured [sic] the Constitution and laws of the United States." Compl. ¶ 49. The Supreme Court has stated that 42 U.S.C. § 1983 ("Section 1983") "is not itself a source of substantive rights, but merely provides a method for vindicating

federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). To sustain a Section 1983 claim, Plaintiff must prove that Chief Freitas: (1) acted "under color of state law," and (2) denied Plaintiff "rights secured by the Constitution or laws of the United States." *Chongris v. Bd. of Appeals of Town of Andover*, 811 F.2d 36, 40 (1st Cir. 1987); *see also Soto v. Flores*, 103 F.3d 1056, 1062 (1st cir. 1997) (noting that the second element also requires proof "that the defendant's conduct was a cause in fact of the alleged deprivation").

In a standard Section 1983 action, the "under color of state law" element is satisfied where a plaintiff sues a governmental actor operating within the scope of their official capacity. *See, e.g.*, *Tennessee v. Garner*, 471 U.S. 1 (1985) (wrongful death suit brought against municipality and one of its law enforcement officers). Plaintiff has established the first element because Chief Freitas is an employee of Uxbridge and at all relevant periods operated under the color of Massachusetts law. In order to satisfy the second element, Plaintiff must either direct the Court to a Constitutional or federal provision that Chief Freitas violated or plead facts sufficient to establish that his state tort claims form the basis of a Section 1983 cause of action.

Accepting the allegations of the Complaint as true, Chief Freitas defamed the Plaintiff when he falsely informed Kingston's Police Chief that he had an outstanding arrest warrant for stalking. Notwithstanding a claim for defamation, the Court finds that the Complaint and Opposition are simply devoid of any legal basis demonstrating that Chief Freitas' conduct violated a *constitutional* or *federal* provision. Furthermore, even assuming that the facts in support of the state law claims are true, they fail to provide an actionable basis under Section 1983. Section 1983 is not a vehicle for "imposing liability whenever someone cloaked with state authority causes harm, nor does it guarantee due care by government officials." *DePoutot v.*

*Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005) (internal quotations omitted) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848-49, 118 S. Ct. 1708 (1998)). If this were the case, then every state law claim could be bootstrapped into a Constitutional violation, turning Section 1983 into nothing more than a "font of tort law." *Paul v. Davis*, 424 U.S. 639, 701, 96 S. Ct. 1155 (1976). "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." *Baker v. McCollan*, 443 U.S. 137, 146, 99 S. Ct. 2689 (1979). Accordingly, the Court grants Defendants' Motion to Dismiss as to Count XI against Chief Freitas.

## CONCLUSION

For the foregoing reasons, I hereby **GRANT** Defendants' Motion to Dismiss as to Count XI and because I lack jurisdiction to hear the remaining state law claims, I hereby **REMAND** this action to Worcester Superior Court for further disposition.

IT IS SO ORDERED.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**